UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| DEBORAH J. JOHNSON, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:16-cv-00151-TWP-TAB |
| RETIREMENT PLAN OF GENERAL MILLS, INC. AND THE BAKERY, CONFECTIONARY, TOBACCO AND GRAIN MILERS INTERNATIONAL UNION (BCTGM), | ) |
| Defendant. | ) |

**ENTRY ON PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S
ORDER ON MOTION TO STAY LITIGATION AND COMPEL ARBITRATION**

This matter is before the Court on Plaintiff Deborah J. Johnson's ("Johnson") Objection to Magistrate Judge's Opinion and Order (Filing No. 37) regarding the Order on Motion to Stay Litigation and Compel Arbitration (Filing No. 36) ("the Order") filed by Defendants Retirement Plan of General Mills Inc. and the Bakery, Confectionary, Tobacco and Grain Millers International Union (BCTGM) ("the Plan"). For the following reasons, the Court **OVERRULES** Johnson's Objection, **ADOPTS** the Magistrate Judge's Order, and **GRANTS** Defendant's Motion to Stay Litigation and Compel Arbitration.

### I. BACKGROUND

General Mills Incorporated ("GMI") hired Johnson on April 22, 1997. As an employee, she was eligible to participate in the Plan. The Plan provides four distinct retirement benefits—normal, early, disability, and deferred. On September 14, 2015, Johnson applied for disability retirement benefits due to a medical condition. The Plan denied her request and she appealed the Plan's denial. The Plan denied Johnson's appeal.

On August 19, 2016, Johnson sought relief in this Court against the Plan. (Filing No. 1.) In her Complaint, she alleges the Plan breached its contract with her pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 ("ERISA"), when the Plan denied her claim for disability retirement benefits. *Id*. On October 17, 2016, the Plan filed an Answer to the Complaint, denying liability for Johnson's claim. (Filing No. 11.) During this same time period, on September 14, 2016, GMI negotiated a plant closure agreement ("the Agreement") that provided severance benefits to eligible employees. Johnson was an eligible employee and, pursuant to the Agreement, GMI agreed to pay Johnson $20,000.00 in exchange for releasing:

> GMI, its subsidiaries and affiliates…, from all causes of actions, claims, debts or other contracts and agreements... including, but not limited to, any and all claims directly or indirectly relating to [her] employment, or to [her] separation from employment.... This release includes any and all claims under federal, state, and local laws prohibiting employment discrimination, harassment or retaliation, and specifically includes, without limitation, claims arising under… [ERISA]…. However, [Johnson] shall retain any and all vested benefits acknowledged by GMI as benefits to which [she is] entitled as a participant in any GMI benefit plans, and any rights that cannot by law be released by private agreement, including the right to file a complaint or charge with a governmental administrative agency….

("the Release") (Filing No. 23-1 at 1). Johnson also agreed to arbitrate "any dispute or claim arising out of or relating to the above release of claims, including without limitation, any dispute about the validity or enforceability of the release or the assertion of any claim covered by the release" ("the Arbitration Clause"). *Id.* On October 28, 2016, Johnson signed the Release "knowingly, voluntarily and without reliance upon any statements made by or on behalf of GMI except those in [the] release agreement or the other written information provided to [her] in connection with [the] release agreement." *Id.* at 2.

That same day, Johnson's counsel emailed the Plan administrator, inquiring whether the Release would impact her pending breach of contract claim. (Filing No. 37 at 3.) On October 31,

2016, the Plan responded that it would look into the inquiry and get back to Johnson's counsel. *Id.* at 4. The following day, on November 1, 2016, Johnson's counsel replied that "unless informed otherwise, [Johnson is] proceeding with the understanding the severance release will not impact [her] claims in this case." *Id*. The Plan did not reply.

On November 30, 2016, the Plan moved for leave to amend its Answer to add affirmative defenses and a counterclaim based on the Release. ([Filing No. 15](Filing No. 15).) On December 21, 2016, the Court granted the Plan's request ([Filing No. 21](Filing No. 21)), and the Plan filed its First Amended Answer and Counterclaim on December 22, 2016. ([Filing No. 24](Filing No. 24).) Thereafter, on January 6, 2017, the Plan filed a Motion to Stay Litigation and Compel Arbitration pursuant to the Release. ([Filing No. 27](Filing No. 27).) On February 14, 2017, Johnson responded in opposition to the Plan's request to arbitrate, arguing: 1) the Arbitration Clause is unenforceable because it lacks consideration; 2) the Plan is not an intended beneficiary of the Arbitration Clause; 3) Johnson's claim against the Plan is not subject to the Release; and 4) the Plan forfeited its right to enforce the Arbitration Clause when it failed to respond to the November 1, 2016 email and actively litigated the breach of contract claim prior to filing its request to compel arbitration. ([Filing No. 32](Filing No. 32).)

On March 29, 2017, the Magistrate Judge granted the Plan's request to compel arbitration, concluding the Release required Johnson to arbitrate her claim. ([Filing No. 36](Filing No. 36).) Johnson objects to the Magistrate Judge's Order. ([Filing No. 37](Filing No. 37).)

## II.  LEGAL STANDARD

A district court may refer a non-dispositive pretrial motion to a magistrate judge under Federal Rule of Civil Procedure 72(a). Rule 72(a) provides:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after

> being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a). After reviewing objections to a magistrate judge's order, the district court will modify or set aside the order only if it is clearly erroneous or contrary to law. The clear error standard is highly deferential, permitting reversal only when the district court "is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

### III. DISCUSSION

Johnson objects to the Magistrate Judge's Order, contending the Magistrate Judge erred when: 1) failing to address her argument that the Arbitration Clause lacked consideration; 2) concluding the Plan is a party to the Release; 3) finding that Johnson's breach of contract claim against the Plan fell within the scope of the Release; and 4) concluding the Plan did not waive its right to compel arbitration.

#### A. The Arbitration Clause does not lack Consideration

Johnson asserts the Magistrate Judge erred when ignoring her argument that the Arbitration Clause is unenforceable because it lacks consideration. She contends the Court should not enforce the Arbitration Clause because the language of the Release obligated her to arbitrate all claims but did not obligate the Plan to do the same. *See Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126 (7th Cir. 1997) (finding an arbitration provision lacked consideration because it bound only one party with the obligation to arbitrate all claims).

The Court agrees with Johnson that the Order did not specifically address her "lack of consideration" argument. The Court finds, however—when reading the Release as a whole—Johnson's argument fails on the merits because she received adequate consideration in exchange

4

for the Arbitration Clause. "Indiana courts have used both a benefit-detriment and a bargained-for-exchange approach in defining consideration; the courts look for a promisor receiving a benefit or a promisee suffering some detriment, which was bargained-for in exchange for the promise." *Flynn v. AerChem, Inc.*, 102 F.Supp.2d 1055, 1060 (S.D. Ind. 2000). There is no dispute that the Release is supported by consideration. As the Magistrate Judge pointed out, the Plan paid Johnson $20,000.00 in exchange for the Release. Accordingly, because the Release includes the Arbitration Clause, the Court finds that the Arbitration Clause is supported by sufficient consideration. *See Oblix, Inc. v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004) (noting an arbitration clause was as much a part of a deal as plaintiff's salary and commissions, the rules about handling trade secrets, and other terms. "All stand or fall together.").

The Court also notes, despite Johnson's contention and reliance on *Gibson*, *Gibson* does not conclude that all arbitration clauses must obligate both parties to arbitrate in order to obtain adequate consideration. *See* 121 F.3d at 1131 ("*Often*, consideration for one party's promise to arbitrate is the other party's promise to do the same") (emphasis added). Rather, *Gibson* stands for the proposition that "ordinary contract principles [apply] to arbitration agreements" and, as such, consideration for a plaintiff's promise to arbitrate is required. *See id*. at 1130-31. As mentioned, Johnson's receipt of $20,000.00 in exchange for the Release amounts to sufficient consideration and, accordingly, the Court **overrules** Johnson's objection.

**B.** **The Plan is a Party to the Release**

The Magistrate Judge specifically found that the Plan may enforce the Release because it is an affiliate of GMI and, in the alternative, a third party beneficiary. Johnson asserts that both conclusions are clearly erroneous. The Court will address each issue in turn.

5

1. **<u>Affiliate</u>**

There is no dispute that Johnson agreed to release "GMI, its subsidiaries *and affiliates…*, from all causes of actions, claims, debts or other contracts and agreements." ([Filing No. 23-1 at 1](#)) (emphasis added). Johnson, however, objects to the Magistrate Judge's conclusion that the Plan amounts to GMI's affiliate. She points to GMI's regulatory findings with the Security Exchange Commission and notes that the Plan is not listed as a "subsidiary" and GMI does not reference the Plan in its public filings or on its website. Johnson asserts, based on the doctrine of *noscitur a sociis*, the Court must read the term "affiliate" in the same context as "subsidiaries" and cannot give "affiliate" a broader meaning. *See* NOSCITUR A SOCIIS, *Black's Law Dictionary* (10th ed. 2014) ("A canon of construction holding that the meaning of an unclear word or phrase, esp. one in a list, should be determined by the words immediately surrounding it"); *see also Glob. Crossing Telecommunications, Inc. v. Metrophones Telecommunications, Inc.*, 550 U.S. 45, 75–76 (2007) ("A word is known by the company it keeps, and one should not ascrib[e] to one word a meaning so broad that it is inconsistent with its accompanying words.") (citations and quotation marks omitted).

Despite Johnson's contention, the Court agrees with the Magistrate Judge and concludes that the Plan is GMI's affiliate. "Affiliate" is defined as a "corporation that is *related to another corporation by* shareholdings or other *means of control*; a subsidiary, parent, or sibling corporation." AFFILIATE, *Black's Law Dictionary* (10th ed. 2014) (emphasis added). "Control" is defined as the "direct or indirect power to govern the management and policies of a person or entity, whether through ownership of voting securities, by contract, or otherwise; the power or authority to manage, direct, or oversee." CONTROL, *Black's Law Dictionary* (10th ed. 2014). It is evident that GMI has means of control over the Plan. As the Magistrate Judge mentioned, and

6

Johnson does not dispute, the Plan is sponsored and maintained by GMI; GMI appoints the Plan's trustee; GMI retains the right to modify or amend the Plan; and GMI receives all assets not required for benefit payments. The Plan also uses GMI's Employer Identification Number for government reports and GMI's address for legal service of process.

### 2. Third Party Beneficiary

Johnson also objects to the Magistrate Judge's finding that the Plan is an intended beneficiary of the Release. A third-party, intended beneficiary may enforce a contract by showing: (1) a clear intent by the parties to the contract to benefit the third party; (2) a duty imposed on one of the contracting parties in favor of the third party; and (3) performance of the contract's terms is necessary to render the third party the intended benefit. *Barth Elec. Co. v. Traylor Bros., Inc.*, 553 N.E.2d 504, 506 (Ind. Ct. App. 1990).

Johnson argues the Magistrate Judge summarily concluded the Plan is an intended beneficiary without analyzing each of the three elements. She relies on *Daimler* when asserting, despite the Magistrate Judge's conclusion, the Plan is not an intended beneficiary because the Release does not reference the Plan and does not show a clear intent to benefit the Plan. *See Daimler Chrysler Corp. v. Franklin*, 814 N.E.2d 281, 286 (Ind. Ct. App. 2004) (noting plaintiff was not the intended beneficiary because "the body of the contract and the arbitration agreement between Community and Franklin does not reference [plaintiff] and does not show a clear intent to benefit [plaintiff].").

The Magistrate Judge concisely explained his conclusion and analyzed each of the three elements. Specifically, the Magistrate Judge concluded that Johnson's agreement to release "*all* causes of actions" including, "without limitation, claims arising under… [ERISA]" demonstrates that the Release intended to benefit the Plan. (*See* Filing No. 23-1 at 1) (emphasis added). He

further reasoned that the Release intended to benefit the Plan because all claims under ERISA relate to benefit plans and a plaintiff may assert some claims under ERISA *only* against a benefit plan. The Court finds, because Johnson undertook the duty to release all claims under ERISA—which in some cases benefit *only* the Plan—the Magistrate Judge's brief analysis satisfies every element of the third-party beneficiary claim.

Regarding Johnson's contention that the Magistrate Judge arrived to the wrong conclusion, the Court again disagrees and notes that an intent to benefit a third party "may be demonstrated by specifically naming the third-party *or by other evidence*." *Barth*, 553 N.E.2d at 506 (emphasis added). Accordingly, because Johnson does not dispute that the release of *all* claims under ERISA—in many cases—solely benefit the Plan, the Court **overrules** Johnson's objection on this issue.

Johnson also argues that the Plan is not an intended beneficiary because after signing the Release she made clear that she did not intend for the Release to apply to the Plan. The Court relies on the plain language of the Release and again finds that the Magistrate Judge did not commit clear error when concluding that the Plan amounts to an intended beneficiary. (*See* [Filing No. 23-1 at 2](#)) (showing Johnson signed the Release "knowingly" and "voluntarily".)

**C.      The Breach of Contract Claim falls within the Scope of the Release**

Johnson next asserts that the Magistrate Judge erred in concluding that her claim against the Plan fell within the scope of the Release. Johnson specifically argues that the Release applies only to GMI and claims arising from her employment. She contends that the Release does not encompass her disability retirement claim against the Plan.

The Court disagrees and notes that it previously adopted the Magistrate Judge's conclusion that the Plan amounts to GMI's affiliate. Johnson agreed to release "GMI, its subsidiaries *and*

8

*affiliates*…, from *all* causes of actions, claims, debts or other contracts and agreements." ([Filing No. 23-1 at 1](#)) (emphasis added). Accordingly, the Release applies to the Plan. The Court also notes that there is no dispute that Johnson's claim against the Plan arises under ERISA. When signing the Release, Johnson agreed to release all claims including, "*without limitation*, claims arising under… [ERISA]." *Id*. (emphasis added). The Court rejects Johnson's contention that the provision refers only to ERISA claims arising from employment, such as harassment, discrimination or retaliation, rather than claims for disability retirement benefits. As the Magistrate Judge points out, the phrase "without limitation" is unambiguous. Accordingly, the Court finds the Magistrate Judge did not err when concluding that Johnson's ERISA claim against the Plan falls within the scope of the Release.

Johnson also asserts, because GMI acknowledged that she is a vested participant in accordance with the Plan, her claim against the Plan falls under the Release's exception. The Release states that Johnson "shall retain any and all *vested* benefits acknowledged by GMI." *Id*. at 2 (emphasis added). The Magistrate Judge determined that Johnson's reliance on the exception is misplaced because being a vested participant under the Plan does not amount to having a *vested right* to disability pension benefits. The Magistrate Judge noted that disability pension benefits under the Plan are forfeitable and, therefore, not vested. *See Vallone v. CNA Fin. Corp.*, 375 F.3d 623, n.5 (7th Cir. 2004) (Vested benefits…refer to those normal retirement benefits to which an employee has a *nonforfeitable* claim") (emphasis added). Because Johnson presents no arguments refuting the Magistrate Judge's analysis, the Court **overrules** Johnson's objection on this issue.

**D.** **The Plan did not Forfeit its Right to Compel Arbitration**

Finally, Johnson argues the Magistrate Judge incorrectly concluded that the Plan did not forfeit its right to enforce the Arbitration Clause. Despite the Magistrate Judge's conclusion,

9

Johnson contends the Plan waived its right to arbitrate because it failed to respond to her counsel's November 1, 2016 email and actively litigated the breach of contract claim prior to filing its request to compel arbitration.

### 1. **Failure to Respond**

Johnson argues the Plan misled her and breached its fiduciary duty by failing to respond to her inquiries about the Release's impact on her pending breach of contract claim. The duty to disclose material information is central to a fiduciary's responsibility. *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 466 (7th Cir. 2010). The duty to disclose "includes an obligation not to mislead a plan participant or to misrepresent the terms or administration of an employee benefit plan, including an insurance plan." *Id.* The duty to disclose also "exists when a beneficiary asks fiduciaries for information, and even when he or she does not." *Id.*; *see also Vallone*, 375 F.3d at 640-642 (same).

The Magistrate Judge opined that Johnson provided no support for her claim that the Plan and its counsel misled her. He noted that prior to contacting the Plan, Johnson signed the Release "knowingly, voluntarily, and without reliance upon any statements made by or on behalf of GMI except those in [the Release Agreement] or other written information provided to [her] in connection with this [Release Agreement]." (*See* Filing No. 28-1). Thereafter, Johnson's counsel emailed the Plan, inquiring whether the Release would impact her pending breach of contract claim. (Filing No. 37 at 3.) On October 31, 2016, three days after Johnson executed the Release, the Plan responded that it would look into the inquiry and follow-up with Johnson's counsel. *Id.* at 4. The following day, on November 1, 2016, Johnson's counsel replied that "unless informed otherwise, [Johnson is] proceeding with the understanding the severance release will not impact [her] claims in this case." *Id.* The Plan did not respond. On November 30, 2016, however, the

Plan moved for leave to amend its Answer to add affirmative defenses and a counterclaim based on the Release. (Filing No. 15.) The Magistrate Judge found, based on the short timeline and because Johnson signed the Release prior to contacting the Plan, the Plan did not mislead or breach any fiduciary duty to Johnson.

The Court agrees. Despite Johnson's objection and contention that she was forced to sign the Release—it is inconceivable that the Plan misled Johnson because Johnson signed the Release "knowingly" prior to communicating with the Plan. Even if the Court accepted Johnson's argument, Johnson has provided no legal authority to support a finding that the appropriate remedy for breach of fiduciary duty is a forfeiture of arbitration rights. Accordingly, the Court concludes the Magistrate Judge committed no clear error.

### 2. Failure to Immediately Compel Arbitration

Johnson also argues that the Plan waived its right to compel arbitration by actively participating in the lawsuit before asserting the right. *See Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388 (7th Cir. 1995). The Magistrate Judge disagreed with Johnson's argument and concluded that the Plan enforced the Release within thirty-three days of its execution. During those thirty-three days, the Plan answered Johnson's Complaint and participated in a court-ordered status conference. The Magistrate Judge found that such minimal participation did not constitute a waiver.

The Court again agrees with the Magistrate Judge and notes that Johnson's objection amounts to the same argument presented in her initial Response in Opposition to the Plan's request to arbitrate. *Compare* (Filing No. 32 at 16-17), *with* (Filing No. 37 at 14-15.) Johnson presents no arguments refuting the Magistrate Judge's analysis. The Court finds Johnson's reliance on *Cabinetree* misplaced. In *Cabinetree*, the court held that a defendant waived its right to arbitrate

because the defendant removed the case to federal court prior to seeking arbitration in state court. 50 F.3d at 391. Thereafter, the defendant waited eight months to compel arbitration. *Id*. (noting "[t]here is no plausible interpretation of the reason for the delay except that [defendant] initially decided to litigate its dispute…in the federal district court, and that later, for reasons unknown and with no shadow of justification, [defendant] changed its mind and decided it would be better off in arbitration."). Unlike the defendant in *Cabinetree*, the Plan did not remove this case from state court—or invoke judicial process. *See* 50 F.3d at 390 ("invoking judicial process is *presumptive* waiver"). The Plan participated only in court-order status conferences and, thereafter, immediately sought leave to amend its Answer to assert defenses and a counterclaim relating to the Release. Here, the Plan enforced its right to compel arbitration within thirty-three days of the Release's execution—rather than eight months after invoking judicial process. *See id*.

The Court **overrules** Johnson's objection because she has presented no evidence that the Magistrate Judge committed clear error when finding the Plan did not waive its right to arbitrate, nor has she demonstrated that the Plan acted inconsistently with the right to arbitrate. "Arbitration is a waivable contract right, but a waiver of arbitration is not lightly to be inferred." *Morrie Mages & Shirlee Mages Found. v. Thrifty Corp.*, 916 F.2d 402, 405 (7th Cir.1990) (citations omitted). There is no bright line rule that dictates whether a waiver has occurred; instead, we must examine whether "based on all the circumstances, the party against whom the waiver is to be enforced has *acted inconsistently with the right to arbitrate*." *Grumhaus v. Comerica Securities, Inc.*, 223 F.3d 648, 650–651 (7th Cir.2000) (emphasis added) (citations omitted).

## IV. CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Johnson's Objections (Filing No. 37) and **ADOPTS** Magistrate Judge Baker's Order (Filing No. 36), and **GRANTS** Defendant's Motion to Stay Litigation and Compel Arbitration (Filing No. 27).

**SO ORDERED.**

Date: 8/25/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Andrew M. Grabhorn
GRABHORN LAW OFFICE PLLC
a.grabhorn@grabhornlaw.com

Michael D. Grabhorn
GRABHORN LAW OFFICE, PLLC
m.grabhorn@grabhornlaw.com

Stephanie L. Boxell
FAEGRE BAKER DANIELS LLP (Indianapolis)
stephanie.boxell@faegrebd.com

Philip John Gutwein, II
FAEGRE BAKER DANIELS LLP (Indianapolis)
philip.gutwein@FaegreBD.com